UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-00765-MOC
3:19-cr-00279-MOC-DCK-2

| | |
|---|---|
| **DONNA GRAVES,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1].

I.     BACKGROUND

Petitioner was charged along with codefendants Elizabeth Williams and Gerald Harrison in a scheme to defraud and steal from a senior citizen (K.T.) who suffered from dementia and other physical and mental challenges. The charges pertaining to the Petitioner are: conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count One); and money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count Nine). [Doc. 3 (Indictment)]. The codefendants were charged with the wire fraud and money laundering conspiracy counts, as well as with wire fraud conspiracy, wire fraud, aggravated identity theft, interstate transportation of stolen property, theft of government funds, and money laundering. [Id.].

During voir dire, Juror No. 8 stated that he had sat on a criminal jury before and that the jury was unable to reach a verdict, which was frustrating. [Doc. 122 at 21-22]. He nevertheless had a good feeling about how the jury system works. [Id. at 22-23]. The prosecutor then noted that

the alleged victim in the case is an elderly woman suffering from dementia and other physical and mental challenges. [Id. at 55]. Juror No. 8 stated that both of his grandmothers had passed away from Alzheimer's, but that this experience would not affect his ability to be a juror in this case. [Id.].

During opening statements, the prosecutor explained that the Petitioner directed the other codefendants in the scheme and that she was the "puppet master" who was "calling the shots" in the conspiracy. [Doc. 123 at 15-16]. The evidence presented during a two-day trial established that K.T. lived in a small retirement community in Indian Land, South Carolina. Graves owned a cleaning company, and she and Williams cleaned K.T.'s home. In October 2015, Graves and Williams moved K.T. from her home to a two-story apartment in an apartment complex in Charlotte, North Carolina. Graves was identified on the lease as K.T.'s emergency contact, and a credit card in K.T.'s name was used to pay the rent. Graves later contacted a realtor to list K.T.'s home for sale. Over the course of the following several months, the three coconspirators defrauded K.T. out of her home and life savings. In closing, defense counsel argued that the Petitioner was a "master manipulator" and "puppet master" who directed the conspiracy from behind the scenes, despite her lack of direct involvement in many of the incidents:

> When Mr. Smith addressed you at the start of this case … [h]e told you that the evidence would show that the defendant, Donna Graves, was the puppet masker pulling the strings, manipulating her co-conspirators and anyone that stood in her way to defraud, exploit, and steal from [K.T.].
> …
> Donna Graves set the conspiracy in motion. She was the leader. She was the one that knew [K.T.]. She's the one cleaning [K.T.'s] house well before Ms. Williams on the scene…. And the government submits that she's the one that steals [K.T.'s] will out of [her brother's] house. She's the one that hires Ms. Williams…. You heard from those witnesses that the defendant herself as the person in charge.
>
> … Donna Graves is the puppet master. And sometimes the strings are visible; sometimes the strings are invisible. That is, she hides behind the scenes, she tries to cover herself. But everything points back to her.

2

> First of all, [K.T.], the victim herself, Donna Graves was her house cleaner through the company EVO Clean.
>
> … While … defendant is occupying [K.T.'s brother] with … small talk, those young women are in his office stealing [K.T.'s] will. And that's important because the – the stealing of the will and then throwing it away, or claiming that he threw it away at his sister's house, that is what drove an emotional wedge between [the brother] and [the victim, K.T.]…. But throughout every stage of this, Donna Graves is a master manipulator. She's the one.
> …
> Also, the question of what – how did Ms. Grave benefit from the conspiracy? And of course, you've seen plenty of evidence regarding the sale of the house… [T]here's approximately 60 to 70 thousand dollars of cash that's unaccounted for. The government contends it is a reasonable inference that the cash went to Donna Graves.
>
> Again, Donna Graves is a master manipulator. She's able to create distance between herself and what's happening.
> …
> So throughout the conspiracy, throughout taking a look at the evidence, we see a woman who not only takes advantage of people, and we've noted her being a master manipulator and we've mentioned some of the folks, but also in taking advantage of circumstances. We have the circumstances of [the victim's brother] going to Duke to get cancer treatment…. And so what happens? Donna Graves, rather than providing some empathy…, what does she do? She takes advantage of that opportunity to move his sister….
>
> So all that you've heard, all the bad acts, all the crimes set in motion by Donna Graves, the puppet master of this entire conspiracy.
> …
> And it's also important to note – and you can take a look at the phone records. Donna Graves is a master manipulator, and when she can no longer use you, she's done with you….

[Doc. 124 at 88, 91, 119-26]. Defense counsel did not object to these comments.

The jury found the Petitioner guilty of both counts. [Doc. 93 (Verdict)].

The Presentence Investigation Report ("PSR") grouped Counts One and Nine, and calculated the offense level based on Count Nine because it resulted in the higher offense level. [Doc. 97 at ¶ 84]. The base offense level was 22 because the offense violated § 1956(h) and the underlying offense was wire fraud conspiracy; the loss amount was in excess of $250,000 but less

3

than $550,000; the offense conduct resulted in substantial financial hardship to one or more victims; and the offense involved the unauthorized transfer or use of any means of identification to unlawfully produce or obtain any other means of identification. [Id. at ¶ 78]. Two-level enhancements were added because: the Petitioner was convicted under § 1956; the Petitioner knew or should have known that the victim was vulnerable; and the Petitioner abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or concealment of the offense. [Id. at ¶¶ 78-81]. The Petitioner had zero criminal history points and a criminal history category of I. [Id. at ¶¶ 96-97]. The resulting advisory guideline range was between 78 and 97 months' imprisonment and between one and three years of supervised release. [Id. at ¶¶ 125, 130].

The Court sentenced the Petitioner at the top of the guidelines to 97 months' imprisonment for each count, concurrent, followed by two years of supervised release, and it imposed restitution of $298,407.85. [Doc. 109 (Judgment)].

On direct appeal, the Petitioner argued that: the sentence is procedurally and substantively unreasonable; the prosecutor's comments describing Petitioner as a "puppet master" and a "master manipulator" amounted to prosecutorial misconduct; and counsel was ineffective for failing to strike Juror No. 8, and for failing to object to the prosecutor's opening and closing arguments. The Fourth Circuit Court of Appeals affirmed the Judgment. United States v. Graves, 2022 WL 1073863 (4th Cir. April 11, 2022). As to the claim of prosecutorial misconduct, the Fourth Circuit found that "Graves cannot establish error, let alone plain error, because she fails to show that the Government's statements had any impact on the jury's decision. The Government's descriptions of Graves aligned with the evidence presented regarding her role in the conspiracy. Moreover, the evidence of Graves' guilt was overwhelming." Id. at *2. The Fourth Circuit found that the record

4

did not conclusively show that counsel provided ineffective assistance with regards to the jury selection issue and the alleged prosecutorial misconduct and, therefore, this claim should be raised, if at all, in a § 2255 petition. Id. at *3.

The Petitioner filed the instant Motion to Vacate through counsel on November 13, 2023. She argues that trial counsel was ineffective for: (1) failing to object to the Government's "repeated, inflammatory, and unfounded name-calling," i.e., "puppet master" and "master manipulator;" and (2) failing to challenge Juror No. 8. [Doc. 1 at 5-6]. On December 6, 2023, the Court ordered the Government to respond to the Petitioner's Motion to Vacate within 60 days. [Doc. 6]. The Government filed a Response on February 5, 2024, arguing that the Motion to Vacate should be dismissed or denied because: Petitioner has failed to establish deficient performance where the Fourth Circuit has already decided that the prosecutor's comments were not improper and counsel had no reason to believe that Juror No. 8 would not be impartial; and Petitioner cannot establish prejudice because, as the Fourth Circuit noted, the evidence against her was overwhelming. [Doc. 7]. The Petitioner has not replied and the time to do so has expired.[1] Accordingly, this matter is ripe.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to

---

[1] On April 15, 2024, the Court received a letter dated March 27, 2024 that was signed by Hunter Lauren VanPelt on behalf of the Petitioner, arguing that the Motion to Vacate should be granted because the Government had failed to timely respond. The Petitioner is not entitled to make pro se filings while she is represented by counsel; nor may Ms. VanPelt advocate for Petitioner without having appeared as counsel in this case. See generally United States v. Hunt, 99 F.4th 161, 184 (4th Cir. 2024) (a defendant has no right to standby counsel or hybrid representation); N.C. Gen. Stat. §§ 84-4, 84-8 (addressing the criminal offense of unauthorized practice of law). The Court accepts the Government's Response, which was filed one day late, as timely. See generally Fed. R. Civ. P. 6. In any event, the Court would reach the same conclusion even if it did not consider the Government's Response.

collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir.

2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

### A. Prosecutor's Comments

It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

Here, the Petitioner argued on direct appeal that the prosecutor's comments describing her as a "puppet master" and as a "master manipulator" were improper. The Fourth Circuit denied this claim on the merits because the Petitioner failed to demonstrate that they had any impact on the jury's decisions, the comments aligned with the evidence presented to the jury, and the evidence of Petitioner's guilt was overwhelming. The Petitioner's present attempt to recast this claim as one of ineffective assistance of counsel is rejected because it was already fully considered by the Fourth Circuit on direct appeal, and this claim is dismissed. Even if this claim were properly before the Court, it would be denied on the merits because counsel was not ineffective for failing to object to the prosecutor's fair comments on the evidence, and because there is no reasonable probability that the comments affected the verdict in light of the overwhelming evidence of Petitioner's guilt.

### B. Jury Selection

The Sixth Amendment guarantees to criminal defendants "the right to a ... trial[ ] by an impartial jury." U.S. Const. amend. VI. To be impartial, a jury must be "capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217 (1982). Jurors are "presumed to be impartial, absent indications to the contrary." Wells v. Murray, 831 F.2d 468, 472 (4th Cir. 1987). "Reduced to its essentials, the inquiry is whether 'the juror can lay aside [her] impression or opinion and render a verdict based on the evidence presented in court.'" United States v. Powell, 850 F.3d 145, 149 (4th Cir. 2017) (quoting Irwin v. Dowd, 366 U.S. 717, 722 (1961)).

Here, the record conclusively demonstrates that Juror No. 8 could be fair and impartial notwithstanding his previous frustrating experience sitting on a hung jury, and his family members' Alzheimer's disease. Counsel did not perform deficiently by deciding not to assert a cause challenge that had no realistic likelihood of succeeding. See, e.g., United States v. Powell, 850 F.3d 145, 150 (4th Cir. 2017) (a reasonable lawyer could have decided not to raise a juror statement that did not rise to the level of actual bias). Nor can counsel's failure to exercise a peremptory or cause challenge to strike this unbiased juror have resulted in any conceivable prejudice because the Petitioner received the fair and unbiased jury to which she was entitled. Accordingly, the Petitioner's claim that counsel provided ineffective assistance with regards to jury selection is denied.

## IV. CONCLUSION

For the foregoing reasons, the Petitioner's § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DISMISSED and DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: October 18, 2024

Max O. Cogburn Jr.
United States District Judge

9

Case 3:23-cv-00765-MOC   Document 9   Filed 10/18/24   Page 9 of 9